# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| PAULA HOOPINGARNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:18-CV-62-HAB |
| | ) |
| ANDREW SAUL,[1] | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Paula Hoopingarner's ("Hoopingarner") appeal of the Social Security Administration's ("SSA") Decision dated March 9, 2017 (the "Decision"). Hoopingarner filed her Brief in Support of Her Request for Review and Remand of the Commissioner of Social Security's Final Decision (ECF No. 13) on August 27, 2018. Defendant filed his Memorandum in Support of Commissioner's Decision (ECF No. 16) on December 10, 2018. Hoopingarner filed her Reply Brief in Support of her Request for Review and Remand of the Commissioner of Social Security's Final Decision (ECF No. 17) on December 17, 2018. This matter is now ripe for review.

## ANALYSIS

**A.    Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). See also Section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th

Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**B.     The ALJ's Decision**

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A); § 1382c(a)(3)(B).

If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ determined that Hoopingarner had not engaged in substantial gainful activity since February 23, 2014. At step two, the ALJ found that Hoopingarner had the following severe impairments: degenerative disc disease of the lumbar spine, rheumatoid arthritis, chronic

3

pain syndrome, and obesity. The ALJ further found that Hoopingarner had the following non-severe impairments: headaches, depressive disorder and generalized anxiety disorder. Finally, the ALJ found that Hoopingarner's diagnosis of fibromyalgia did not meet the qualifications for a medically determinable impairment under SSA regulations.

At step three, the ALJ found that Hoopingarner did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (ECF No. 9 at 18). At step four, the ALJ found that Hoopingarner had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that she could occasionally climb ramps and stairs, and that she should never climb ladders, ropes, and scaffolds. She could occasionally balance, stoop, kneel, crouch and crawl, but that she should avoid concentrated exposure to hazards such as unprotected heights, dangerous moving machinery, and wet, slippery or uneven surfaces. Given that RFC, the ALJ determined that Hoopingarner could perform past relevant work as a Customer Service Agent, and therefore was not disabled.

C.   **Residual Functional Capacity**

On appeal, Hoopingarner argues that the ALJ's RFC determination was not supported by substantial evidence.[2] She submits that the ALJ ignored evidence showing that her depression and anxiety were severe impairments, including various statements and notations in her medical records and Function Reports. Hoopingarner further contends that, even if her mental conditions are not considered severe, the ALJ still committed error by failing to evaluate her mental conditions

---

[2] Although Hoopingarner submits that the ALJ erred in her Step 2 analysis when she did not consider her mental impairments to be severe, the Court can proceed directly to the RFC analysis because the step two requirement of severity is "merely a threshold requirement." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999); *see also Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) (same). The ALJ identified other impairments that were severe, so the determination about her depression and anxiety at Step 2 were "of no consequence with respect to the outcome of the case. Because the ALJ recognized numerous other severe impairments, he was obligated to proceed with the evaluation process." *Castile*, 617 F.3d at 927.

in combination with her other impairments. Finally, Hoopingarner claims that the ALJ failed to consider various evidence regarding her physical impairments supporting her claim of disability.

Residual functional capacity (RFC) measures what work-related activities a claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). It is the most the claimant can still do. *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1)). A claimant's RFC must be based upon the medical evidence in the record and other evidence, such as testimony by the claimant or her friends and family. 20 C.F.R. § 404.1545(a)(3).

Although an ALJ is not required to discuss every piece of evidence, she must consider all the evidence that is relevant to the disability determination and provide enough analysis in her decision to permit meaningful judicial review. *See Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004); *Clifford v. Apfel*, 227 F.3d 863, 870–71 (7th Cir. 2000). The ALJ must also "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." See 20 C.F.R. § 404.1523(c). An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

The ALJ's determination is based primarily on two pieces of evidence. The first is Hoopingarner's apparent improvement after the surgical implantation of a spinal cord stimulator on December 18, 2014. (ECF No. 9 at 21). Specifically, the ALJ notes that, during a January 2, 2015, appointment, Hoopingarner reported that her symptoms were overall better since the surgery. (*Id.*). What the ALJ fails to consider are the two lines immediately beneath this statement in the same visit noted. Those lines state: "Comments: Patient states that the mornings are the

5

worst. Still having difficulty with sleeping. SCS works well on pain during the day. Sleeping has been a chronic problem." (*Id*. at 863). The ALJ also failed to consider the evidence that whatever relief Hoopingarner obtained from the stimulator was lost over time. During the September 16, 2016, hearing, Hoopingarner testified that she experienced a "15% change in [her] pain level" from the stimulator. (*Id*. at 48). On a normal day, Hoopingarner described her back pain as an 8 out of 10. (*Id*. at 58). The stimulator had been adjusted several times in an attempt to alleviate her pain, and she was scheduled to undergo another procedure where more electrical leads would be implanted. (*Id*. at 61). When the record is viewed as a whole, it is impossible to determine that the stimulator was the magic bullet described by the ALJ.

The second key piece of evidence relied upon by the ALJ was Hoopingarner's description of her daily activities.[3] The ALJ repeatedly notes that Hoopingarner stated she could perform some activities of daily living like "cooking, shopping, and getting her daughter ready for school." (*Id*. at 22). As Hoopingarner points out, the ALJ's discussion of these activities omits the significant restrictions that must be overcome to perform even these activities. Hoopingarner testified that, while she does cook, it's "usually something that can go in the oven" so that she doesn't have to stand and keep an eye on it. (*Id*. at 70). With respect to shopping, Hoopingarner testified that she goes with her husband, that she rides in a mobility scooter, and that she is there "just to make sure [her husband and daughter] get what they need." (*Id*.). The ALJ's statement that Hoopingarner gets her daughter ready for school isn't even accurate. The actual quote from the hearing is, "I usually get my daughter up. She gets ready for school." (*Id*. at 71).

---

[3] While daily activities can be considered in evaluating alleged symptoms, the Seventh Circuit has "cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008).

Moreover, the discussion of these three, isolated activities ignores all the testimony from Hoopingarner regarding the activities that she cannot perform. Hoopingarner attempts to wash dishes, but can only do so for ten minutes, at which point she has to take a twenty-minute break. (*Id*. at 62). Hoopingarner drives to the grocery store, but after she does so she experiences pain throughout her legs and her left foot goes numb. (*Id*. at 63–64). Hoopengarner must take two, two-hour naps per day due to chronic fatigue. (*Id*. at 66). She must switch between sitting and standing every twenty minutes. (*Id*. at 68). She can lift no more than a gallon of milk and can only walk two blocks before having to take a five to ten-minute break. (*Id*. at 69). In short, this is not a woman who easily performs tasks around the home, as she is portrayed by the ALJ.

The foregoing examples are just a small sample of the errors in the RFC determination. Other, less prominent, errors exist throughout the determination. The ALJ makes much of Hoopingarner's gap in treatment, claiming that it is evidence that she suffered no symptoms after October 2015. (*Id*. at 23). However, the ALJ makes no reference to the September 26, 2016, letter from Hoopengarner that explains the lack of treatment was the result of financial and family issues. (*Id*. at 320). The ALJ relies on Exhibit 1A, a state agency disability determination, as evidence supporting the RFC without noting that the very same determination stated that "the evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim." (*Id*. at 93). This same insufficient evidence finding was made by the state agency during the reconsideration process. (*Id*. at 105).

As noted above, the ALJ need not discuss every piece of evidence in the record. However, the ALJ must address evidence that is directly contrary to her decision to deny a claim. An ALJ cannot simply select evidence favoring her conclusion but must "confront evidence that does not support [her] conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539,

7

543 (7th Cir. 2002). An ALJ must consider all relevant medical evidence and cannot cherry-pick facts that support a finding of non-disability while ignoring evidence supporting disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)). "A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)). The Court concludes that the ALJ failed to confront the evidence that did not support her conclusion and must therefore remand this case for further proceedings.

Because the Court is remanding on these issues, the Court need not consider the remainder of the parties' arguments.[4]

## CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS to the ALJ for further proceedings consistent with this Opinion and Order.

SO ORDERED on August 19, 2019.

                                         s/ *Holly A. Brady*
                                         JUDGE HOLLY A. BRADY
                                         UNITED STATES DISTRICT COURT

---

[4] For the purposes of remand in this case, and for evaluation of future cases, the Court implores the ALJ to stop considering a lack of mental health treatment as evidence of a lack of mental impairment. *See* ECF No. 9 at 22. Such a connection is contrary to Seventh Circuit case law, *see Kangail v. Barnhart*, 454 F.3d 627, 630–31 (7th Cir. 2006), and does little more than undermine the rest of the ALJ's evaluation of a claimant's mental state.